MANUEL AND SHEILA REIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; KEY MAN FUNDING CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reis v. Commissioner
Docket Nos. 3153-92, 3154-92
United States Tax Court
T.C. Memo 1995-231; 1995 Tax Ct. Memo LEXIS 232; 69 T.C.M. (CCH) 2728; May 25, 1995, Filed *232 Decisions will be entered under Rule 155. For petitioners: Robert A. Levy and V. Jean Owens. For respondent: Harris L. Bonnette, Jr.
GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Manuel and Sheila Reis
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)[1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1983
$ 13,362
$ 3,340
$ 705
[1]
$ 3,341
1984
10,260
2,565
560
[1]
2,565
1985
13,937
3,484
783
[1]
3,484
Key Man Funding Corp.
Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1984
$ 5,319
$ 1,330
$ 282
[1]
1985
2,139
535
285
[1]
*233 After concessions, the issues remaining for our consideration are: (1) Whether petitioner Sheila Reis received taxable dividends or capital gains from Key Man Funding Corp. (hereinafter, KMFC) in 1983, 1984, and 1985; (2) whether KMFC claimed excessive interest expense deductions for 1984 and 1985; (3) whether petitioner Manuel Reis is liable for self-employment tax on his income for 1983 and 1984; (4) whether petitioners are liable for the addition to tax for negligence or intentional disregard of rules or regulations; (5) whether the Reises are liable for the addition to tax for substantial understatement of income tax for 1983, 1984, and 1985; and (6) whether petitioners are liable for the addition to tax for failure to timely file their respective income tax returns. FINDINGS OF FACT [2]
Petitioners Manuel and Sheila Reis, who, at all pertinent times, were husband and wife, resided in Port Charlotte, Florida, at the time their petition in this case was filed. KMFC is incorporated and has its principal place of business in the State of New York. Respondent mailed notices of deficiency to each petitioner on November 14, 1991. *234 On August 1, 1973, Mrs. Reis and her former husband, Barry Rosen, formed KMFC. KMFC was set up to engage in the mass marketing and sale of low cost health and life insurance. Typically, this type of insurance was marketed through the use of pamphlets which were mailed along with consumers' periodic credit card statements. KMFC was active from 1975 through 1976, and again from 1982 through the relevant years at issue. On April 1, 1976, Mrs. Reis and Mr. Rosen started a New Jersey corporation called Key Man Corp. (hereinafter, KMC), also engaged in the sale of low cost health and life insurance. Both corporations conducted their insurance businesses as general agents of the National Benefit Life Insurance Co. KMC was active from its date of incorporation through March 31, 1983. Upon its termination, KMC transferred all of its assets and liabilities to KMFC. In 1977, Mr. Rosen died, leaving Mrs. Reis as the sole shareholder of both KMFC and KMC. In 1980, Mrs. Reis approached Jeffrey Milstein, a public accountant who was recommended to her to assist with KMC's, KMFC's, and her personal books, records, and tax returns. Mr. Milstein received all documentation related to KMC, *235 KMFC, and Mrs. Reis' personal finances. Mr. Milstein secured loan papers, checks, and other related documents that Mrs. Reis gave him, ultimately preparing workpapers based on those records. Mr. Milstein did not testify at trial. On September 21, 1978, Mrs. Reis borrowed $ 53,500 from the New Jersey National Bank. Mrs. Reis then used the proceeds from this loan to make a loan to KMC. On its corporate tax returns, KMC reported its total loans payable to Mrs. Reis as follows: March 31, 1980
$ 61,250
March 31, 1981
54,250
March 31, 1982
22,550
March 31, 1983
-0-  During KMC's fiscal year 1983, it paid $ 22,550 to Mrs. Reis to reduce its loan balance to zero, and deducted $ 10,700 as interest expense, which Mrs. Reis duly reported as interest income on her 1983 tax return. On February 4, 1982, the New Jersey National Bank notified Mrs. Reis that, because the market value of her stock collateral was not comparable with the balance of her loan, and because she had not made her December 31, 1981, quarterly interest payment, she must provide additional collateral or they would call the loan. In February 1983, after having the balance of her $ 53,500 loan called by the *236 New Jersey National Bank, Mrs. Reis personally borrowed $ 40,000 from the Princeton Bank, using the proceeds to pay off the remaining New Jersey National Bank balance of $ 40,827. KMFC, however, recorded the $ 40,000 as a loan payable to the Princeton Bank, and reported a loan from shareholder of $ 40,000. KMFC then made periodic payments to the Princeton Bank, reducing the $ 40,000 loan, and taking the related interest expense deductions. During 1983, KMFC made $ 14,500 in direct payments to Mrs. Reis. KMFC made principal and interest payments of $ 18,615 directly to the Princeton Bank on the loan that Mrs. Reis obtained in February 1983. Further, KMFC paid $ 8,021 of Mrs. Reis' personal charge card expenses in 1983. Therefore, in 1983, KMFC made total payments to Mrs. Reis, or on her behalf, of $ 41,136. Prior to these distributions, KMFC had a balance in capital stock of $ 100 and additional paid-in capital of $ 11,894. For 1983, the Reises drew no salary from KMFC. In 1984, Mrs. Reis received $ 17,000 in direct payments from KMFC. In addition, KMFC paid principal and interest of $ 22,764 on Mrs. Reis' loan from Princeton Bank. Moreover, KMFC paid $ 5,603 of Mrs. Reis' *237 personal charge card expenses in 1984. Accordingly, in 1984, KMFC distributed a total of $ 45,367 either directly or indirectly to Mrs. Reis. Prior to the 1984 distributions, KMFC had remaining paid-in capital of $ 2,004. [3] KMFC did not claim any salary expense for 1984. Mrs. Reis received $ 14,000 from KMFC in 1985. [4] *238 KMFC paid $ 18,011 of principal and interest in 1985 on Mrs. Reis' personal loan. Additionally, KMFC paid $ 6,100 of Mrs. Reis' personal credit card expenses. Hence, in 1985, $ 38,111 was paid to or on behalf of Mrs. Reis. [5] In the beginning of 1985, KMFC had no capital balance. [6] For 1985, KMFC claimed compensation to officers of $ 20,000. KMFC had accumulated earnings and profits of $ 31,146, $ 35,133, and $ 35,794 for 1983, 1984, and 1985, respectively. Finally, in his 1983 and 1984 tax returns, Mr. Reis did not compute or report any self-employment tax liability on his insurance sales income. We find that Mr. Reis failed to report income that he received from KMFC in 1983, 1984, and 1985, in the amounts of $ 14,041, $ 10,333, and $ 10,190, respectively, from his insurance sales activity. Mr. Reis did not show that he was entitled to the $ 1,800 home office expense that he claimed on both his 1983 and 1984 tax returns. Of the $ 1,266 and $ 3,548 travel and entertainment expenses that Mr. Reis claimed in 1983 and 1984, only $ 886 and $ 2,484 were substantiated for those years, *239 respectively. Moreover, the Reises did not establish that they had provided over one-half of the support for their son or their son's ex-wife for the taxable year 1983. Nor did the Reises establish that they provided over one-half of the support for their son during 1984 or 1985. Thus, the Reises are not entitled to the dependency exemptions that they claimed in 1983, 1984, and 1985 in the amounts of $ 2,000, $ 1,000, and $ 1,040, respectively. The Reises claimed a $ 1,725 deduction for a two-earner married couple for 1985. The lesser of the earned incomes of the two petitioner spouses is $ 20,000. Hence, their allowed deduction should be increased, by $ 275, to $ 2,000. [7]
KMFC claimed travel and entertainment expenses in the amounts of $ 20,610 and $ 20,933 for 1984 and 1985, respectively. However, of those expenses, KMFC was able to substantiate only $ 1,935 for 1984 and $ 600 for 1985. One-half of these expenditures were paid by Mrs. Reis *240 personally. Furthermore, 60 percent of these expenditures were personal. [8]
The Reises filed their 1983, 1984, and 1985 Federal tax returns on September 18, 1989, October 31, 1986, and July 14, 1988, respectively. KMFC filed its 1984 tax return on November 20, 1985, and its 1985 tax return on September 18, 1989. OPINION Constructive Dividends
Mrs. Reis contends that some amounts that she received from KMFC were for repayment of her loan to the corporation, and, therefore, she did not report the payments as income. Respondent determined that, with respect to the payments at issue, KMFC did not have a bona fide debt owed to Mrs. Reis; rather, any payments were dividends as a result of Mrs. Reis' equity in KMFC. Accordingly, the burden is on petitioner to show that her payments were related to a bona fide indebtedness. Rule 142(a); . *241 We shall first discuss the direct payments from KMFC to Mrs. Reis. Petitioners did not introduce any credible evidence that would have established the existence of debt with respect to these payments. Initially, we find it quite telling that, regarding these specific payments, they were in even amounts (e.g., $ 250, $ 1,000, and $ 2,000). There was no apparent interest reflected in these payments, nor was there any other evidence that these payments were made to satisfy debt between KMFC and Mrs. Reis. See , affd. without published opinion (holding that, because the taxpayers presented no evidence to the contrary, respondent's determination of constructive dividends was sustained). Furthermore, petitioners offered no evidence of indebtedness (e.g., a loan agreement or repayment schedule). Hence, we find that the direct payments from KMFC to Sheila Reis were not debt related; instead, they were based on Mrs. Reis' equity position in KMFC. Next, it is well settled that a constructive dividend may result from the payment of an individual's *242 personal expenses. See, e.g., ; . During the years at issue, KMFC made $ 19,724 of the Reis' credit card payments. Respondent determined that these credit card payments were constructive dividends to the Reises. Petitioners presented no evidence that the credit card payments were other than taxable dividends. Consequently, they have failed to meet their burden. See (individual petitioners failed to meet their burden of proof as to the taxability of credit card payments made on their behalf). Furthermore, we note that the payments were for either personal expenses or for nondeductible travel. Therefore, we hold that these payments were not deductible by KMFC and were constructive dividends to the Reises. Respondent further determined that the loan payments that KMFC made directly to the Princeton Bank were constructive dividends. Respondent argues that, because there were no loan formalities (e.g., a loan agreement), there was no debt *243 arrangement between KMFC and Mrs. Reis. Mrs. Reis asserts that, despite the fact that KMFC made payments on a loan in her name, the payments actually reflect money that she lent to KMFC. The circumstances here reflect that KMFC was making loan payments through Sheila Reis for the corporation's benefit. We are convinced by Mrs. Reis' testimony, the designation of the bank as payee, and by the related circumstances that these payments were not constructive dividends. To the extent that KMFC made payments directly to the Princeton Bank, KMFC was satisfying its debt obligation to Mrs. Reis. We note that interest was at a reasonable percentage in relation to the principal (i.e., approximately 10 percent). KMFC depended on borrowing in order to operate, especially in light of its small operating income. Petitioners were not seeking to evade or otherwise improperly avoid their tax liability. In fact, KMFC claimed no salary expense in 1983 and 1984, and only $ 20,000 in 1985. Although petitioners' record keeping was less than ideal, we find that KMFC's direct loan payments to the Princeton Bank were not constructive dividends to Mrs. Reis. We have determined that some of the payments *244 from KMFC were taxable to Mrs. Reis; we must also determine their character as dividends or capital gains. A distribution by a corporation to a shareholder with respect to its stock out of current or accumulated earnings and profits is a dividend, and it must be included in the shareholder's gross income. Secs. 61(a)(7), 301(c)(1), 316(a); , affg. . KMFC made several payments directly to Mrs. Reis, or on her behalf. KMFC had sufficient earnings and profits in 1983 and 1985 from which the distributions to Mrs. Reis originated. In 1984, Mrs. Reis received amounts slightly exceeding KMFC's earnings and profits. KMFC made direct payments to the Reises, and credit card payments on their behalf. To the extent that these payments were from KMFC's earnings and profits, they are dividends. For any amounts over the Reises' basis, these payments will be treated as capital gains. [9]
*245 KMFC's Interest Expense Deductions
Respondent disallowed the portion of KMFC's interest expense that related to constructive dividends: $ 27,770 for 1984 and $ 6,004 for 1985. Petitioners argue that there were no constructive dividends, and that any such payments were with respect to bona fide debt. KMFC satisfied its loan obligation to Mrs. Reis by paying the Princeton Bank directly. To wit, interest was included with every loan payment. Accordingly, we find that any interest paid by KMFC to the Princeton Bank was for its debt to Mrs. Reis, and that KMFC is entitled to an interest expense deduction to that extent. Sec. 163(a). See, e.g., (sustaining an interest expense deduction for a taxpayer who made direct interest payments). Self-Employment Tax
Respondent determined that Mr. Reis had income from his insurance sales activity of $ 19,239 in 1983 and $ 20,673 in 1984. Self-employment tax is imposed on an individual's gross income, less deductions, that is derived from the individual's trade or business. Secs. 1401 and 1402(a). Mr. Reis bears the burden of proving that he is not required *246 to pay self-employment tax. Rule 142(a); . No proof was offered on this issue. Consequently, Mr. Reis is liable for self-employment tax on his 1983 and 1984 self-employment income. Negligence
Respondent determined that petitioners are liable for additions to tax for negligence or substantial disregard of rules or regulations under section 6653(a)(1), and 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations under section 6653(a)(2). Petitioners bear the burden of showing that they were not negligent. (citing , affg. in part and remanding in part , affg. ; . Negligence, for purposes of an addition to tax, is defined as the "lack of due *247 care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." . Petitioners have taken the position that all of the payments at issue were attributable to loans between Mrs. Reis and KMFC. We have found that approximately one-half of the payments were constructive dividends and not loan payments. Mrs. Reis has maintained that all of the payments concerned debt, yet she has provided the Court with little corroborating evidence, and she has failed to maintain adequate records. Likewise, KMFC failed to maintain the records substantiating interest expense deductions. Furthermore, petitioners' returns were filed late. These actions or omissions were negligent. . Hence, the section 6653(a)(1) and (2) additions to tax are sustained against each petitioner, in each year, with respect to the entire underpayments. Substantial Understatement of Income Tax
Respondent determined that the Reises are liable for additions to tax under section 6661 for substantially understating their income tax for *248 the years 1983, 1984, and 1985. Income tax is substantially understated if, in any year, the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to such understatement. The understatement is reduced under section 6661(b)(2)(B) by that portion for which there is "substantial authority" or that has been "adequately disclosed". Petitioners, however, have failed to show any authority supporting their position that the financial arrangement at issue was debt and not capital. Furthermore, their tax returns contain no details supporting their position that the payments to Mrs. Reis were not dividends. Consequently, they have neither shown substantial authority nor adequately disclosed their position. Therefore, if their income tax understatements are "substantial" within the meaning of section 6661(b)(1)(A), then they are liable for the additions to tax under section 6661(a). Late Filing
Respondent determined that petitioners are liable for the addition *249 to tax under section 6651(a)(1) for filing their tax returns at issue past their respective due dates. Section 6651(a)(1) provides for an addition to tax of 5 percent of the amount of income tax required to be shown if such failure to file is not more than 1 month, with an additional 5 percent for each month such failure continues, not to exceed 25 percent. The addition applies unless it is shown that the failure to timely file is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). Because petitioners have not shown that they had reasonable cause or that their late filings were not due to willful neglect, we find that petitioners are liable for the addition to tax under section 6651(a)(1) for failing to timely file their respective tax returns. To reflect concessions of the parties, Decisions will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the taxable years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency↩
1. 50 percent of the interest due on the deficiency↩
2. The parties have stipulated facts and documents that are incorporated by this reference.↩
3. Of the $ 11,994 total paid-in capital in 1983, $ 9,990 was returned to Mrs. Reis from her $ 31,146 total distributions in that year. Hence, 1984 total paid-in capital is the difference between $ 11,994 and $ 9,990, or $ 2,004.↩
4. Mrs. Reis received a total of $ 24,000; however, $ 10,000 represented payment of a loan that she made to KMFC in Dec. 1984.↩
5. The amount of $ 20,000 was claimed as compensation to officers; therefore, respondent determined that $ 18,111 ($ 38,111 - $ 20,000) was constructive dividends.↩
6. The 1984 paid-in capital balance was $ 2,004. Because this entire amount was returned to Mrs. Reis from her distributions that year, the capital balance was reduced to zero for 1985.↩
7. Mrs. Reis' income of $ 20,000 X 10% = $ 2,000. Sec. 221(a)(1).↩
8. For 1984: (($ 20,610 - $ 1,935) X 50%) X 60% = $ 5,603. For 1985: (($ 20,933 - $ 600) X 50%) X 60% = $ 6,100.↩
9. Distributions exceeding current and accumulated earnings and profits are treated as a return of capital to the extent a taxpayer has stock basis. Thereafter, any additional distribution would result in capital gain. Sec. 301(c).↩